By the Court, Bronson, J.
The supervisors have returned, apaong other t things, that no part of the sum claimed is due; and the relator, instead of traversing, has, in effect, demurred to th.e return. But he insists that this part of the return should be regarded as a mere inference from the other matters set forth by the supervisors, and not as the allegation of a distinct substantive fact. Although I am not prepared to say that this argument cap be supported, I shall nevertheless give it all the force of truth for the purpose of considering the other questions which the case presents.
Including salary, the relator has already received eighteen thousand dollars from the county of New-York for his three years’ services. He has also received costs in those cases where costs were collected from the persons sued, probably amounting to several thousand dollars more. Although this may be regarded as an ample compensation for the services rendered, it is still no answer to the present application, if by law he is entitled to the further sum of six thousand dollars which the writ demands. The examination of his title to that sum may involve two general considerations: first, whether the salary fixed by the common council was the legal measure of his compensation; and second, whether the relator’s account has not been audited and adjusted pursuant to law, and beyond the power of this court to control the matter by mandamus.
I. Formerly, all district attorneys were compensated by fees, and their accounts were audited in the court of exchequer and paid from the state treasury. (2 R. L. 21, and 1 id. 415, § 3.) By the act qf 1818, the fees were modified, and their accounts were made a charge upon the county, to be assessed and collected by the supervisors as a part of the contingent expenses of the county. (Statutes of 1818, p. 306, ch. 283.) Then came the act of March 16, 1821, which provided that the district attorney of the county of Neiv- York should receive an annual salary of three thousand dollars, “ in lieu of the compensation which the county of New-York is now required to pay him;” *365 to which a further clause was added, “ that ‘it shall not thereafter [the passing of the act] he obligatory upon the supervisors of said county to allow any of the accounts of the said district attorney for services thereafter to be rendered, nor shall it be obligatory upon the said county to pay any such accounts, nor to pay him my other compensation whatsoever for any services which he may thereafter render.” (Statutes of 1821, p. 91, § 1.) This statute plainly covers the whole ground, and the relator must get rid of it before he can make title to any compensation beyond his salary.
The act of 1821 was so far modified by the revised statutes, as to authorize the common council of the city of New-York to fix the salary of the district attorney at a sum not less than two thousand five hundred, nor more than three thousand five hundred dollars. (1 R. S. 383, § 95.) This touched nothing but the amount of the salary, and the mode of fixing it. As to every thing else, the act of 1821 remained in full force. But it is said, that although the act was not, in terms, repealed by the general repealing statute, yet it was, in effect, abrogated by the 10th, 11th and 14th sections of that statute. (2 R. S. 779.) I have read those sections with attention, without being able to perceive that they have any bearing on the question.
But should it be conceded that the act of 1821 has been repealed, I do not see how it can aid the relator. The revised statutes provide, that “the district attorney of the city and county of New-York shall receive for his services an annual salary, not less, &c., to be fixed and paid by the common council of that city.” (1 R. S. 383, § 95.) The language is general, including •all services, and there is nothing to limit or qualify its influence. We may just as well except criminal prosecutions from the operation of this provision, as we can except suits for fines and upon forfeited recognizances. The justice of this remark is the more apparent, from the fact, that the remaining clause of the same section contains just such a qualification in rela *366 tion to other'district attorneys, as the counsel wishes to have understood in' the clause relating to the district attorney of New-York. “ The district attorneys of all the other counties in the state shall be paid for the services in conducting criminal prosecutions, by their respective counties,” &c. The legislature evidently intended, that the salary to be paid by the common council should be the only charge upon the county of New-York for the services of its district attorney. The fees which he receives in civil suits he may retain, in addition to the salary; but a failure to collect those fees from the persons sued will not authorize him to charge them to the county. (See The People v. Van Wyck, 4 Cowen, 260.) The act of 1839, (Statutes of 1839, p. 317,) which gives costs to the New-York district attorney in certain cases, cannot aid the relator, because it was passed since he left the office.
One or two arguments for the relator on this branch of the case remain to be noticed. By the third section of the act of 1821, fines and forfeited recognizances in New-York were to be collected by the sheriff of that county. (Statutes of 1821, p. 91.) This provision was left in force when the laws were subsequently revised. (2 R. S. 487, § 43.) But this section was repealed soon after the new code took effect, and three new sections were substituted, which authorized the district attorney to sue for the fines of defaulting jurors. (Statutes of 1830, p. 399, § 52.) It is said that this statute imposed a new duty upon the district attorney, and that he is consequently entitled to compensation beyond the amount of his salary. The language of the statute is, that the district attorney may proceed to collect the fines by actions of debt to be brought ih the court of common pleas, and that judgments may be entered for the amount of the fine and costs of suit. If this must be understood as an imperative provision, it is not quite clear that it imposed a burden upon the district attorney. He" might be very willing to sue for fines, and take the chance of collecting costs from the persons sued. But should it be conceded that the statute imposed a new *367 and onerous duty upon the district attorney, it does not follow that he is entitled to any additional compensation on that account. By charging the attorney with the duty of suing for fines, without making provision for the payment of costs, the legislature has, in effect, declared, that the salary of the officer is to be deemed the compensation for these, as well as for other services. It is impossible for a salary officer to make title to an increased compensation, on the sole ground that a new duty has been cast upon him by the legislature. There are few state officers, whether executive or judicial, who have not often been charged with new duties, and yet no one has, I presume, ever thought that this gave him a legal title to increased compensation. Whether the pay shall be increased with the burden, is a question which addresses itself to the legislature. The courts have nothing to do with it.
Another argument is, that the supervisors, by allowing a part of the relator’s account, have admitted his right to these costs, and cannot now resist the payment of the balance which he claims. But the voluntary payment of a part of a demand cannot be construed into an admission of liability for the residue, where, as in this case, such liability was expressly denied.
II. Should it be conceded that the relator is entitled to something beyond his salary, I see no ground on- which we can interfere by mandamus. The supervisors have not refused to audit the account. They have only exercised their discretion as to the extent of the allowance, and in such a case a mandamus will not lie. (The People v. Supervisors of Albany, 12 John. R. 414. Hall v. Supervisors of Oneida, 19 id. 259. The People v. Supervisors of Dutchess, 9 Wendell, 508.) If the supervisors have gone too far, in disallowing one third of the amount claimed, the relator has no remedy in this form of proceeding, if he has in any other.
But it is said that the fee bill governed the amount of the relator’s compensatidn, and that the supervisors had no discretion in the premises. If the relator’s costs had been *368 taxed as against thé persons sued—a fact which does hot appear —I am not prepared to say that that would be conclusive upon the county. But it is unnecessary to decide that question. A portion of the amount rejected by the supervisors^ consisted of a charge of two dollars and fifty cents in each case where a fine had been paid without suit. These charges did not depend On the fee bill, and the supervisors were at liberty to allow as much or as little as they thought proper. Another considerable portion of the account was rejected on the ground that the relator had in many instances brought several suits and charged several bills of costs, wheré there should have been but one. This fact, which is stated in the return, is admitted by the demurrer. and the supervisors were right in disallowing the charges to which the objection applies. In the remaining cases where deductions were made from the account, the supervisors allowéd the several bills of costs at a less sum in the aggregate than the relator had charged; but it does not appear from the return but that the full amount of taxable costs was allowed in every instance".
I will only add a single remark, covering the whole of this branch of thé casé; indeed, it is süfficiént to" dispose' of thé whole matter. Assuming that the relator is entitled to the full amount of his taxable costs in all the stiitS which he brotight, there is nothing in this return which will authorize ús to say that the supervisors have fallen short of that measure of jhstitíe in the allowance1 which they made.
In every view of the cáse' wé are of Opinion that the claim Of the relator must fail.
Motion denied.